George M. BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–89–01205–CR.

Court of Appeals of Texas, Dallas.

Oct. 29, 1990.

Lawrence B. Mitchell, Dallas, for appellant.

Yolanda M. Joosten, Dallas, for appellee.

Before STEWART, BAKER and OVARD, JJ.

## OPINION

BAKER, Justice.

A jury convicted George M. Brown of the offense of arson. The trial court assessed punishment, enhanced by two prior convictions, at thirty-five years' confinement. Appellant contends that the trial court erred: (1) in overruling his objection to the State's amendment of the indictment after the trial began; and (2) in sustaining the State's objection to evidence offered to impeach the complainant. We hold the errors, if any, are harmless. We affirm the trial court's judgment.

The indictment alleged that the habitation owner was "Yolander Evette Weeks." The State called the complainant as the first witness. On cross-examination the complainant spelled her first name as "Yolanda."

When the State rested, appellant moved for an instructed verdict. The ground was the variance between the spelling of the complainant's name in the indictment and at trial. The trial court denied the motion for an instructed verdict. However, the court said it intended to charge the jury on the law of *idem sonans*. *See Jackson v. State*, 419 S.W.2d 370, 371 (Tex.Crim.App. 1967).

The defense then presented evidence and rested its case. The State then orally moved to strike the word "Yolander" as surplusage. Appellant objected to the State's motion. Appellant argued that the change of the complainant's name did not relate to surplusage in the indictment because the complainant's name was an essential allegation. The trial court overruled this objection.

In his first point of error, appellant argues that the trial court's ruling prejudiced his substantial rights because it denied him the opportunity to respond to the amendment or to prepare a defense. *See Mills v. State*, 747 S.W.2d 818, 821 (Tex.App.—Dallas 1987, no pet.). Appellant also asserts that permitting the State to drop the complainant's first name prejudiced his rights because it denied him the opportunity to submit an *idem sonans* jury instruction. He argues that submission of such an instruction could have permitted the jury to return a not guilty verdict because of the variance between the sound and spelling of the two names.

Article 28.10 of the Texas Code of Criminal Procedure governs the State's right to seek an amendment. *See* TEX.CODE CRIM. PROC.ANN. art. 28.10 (Vernon 1989). Appellant argues that although the article permits the State to seek an amendment after trial commences, it denies the State that right if the defendant objects. *See* TEX. CODE CRIM.PROC.ANN. art. 28.10(b) (Vernon 1989). As support for this interpretation of article 28.10, appellant relies on *Howard v. State*, 667 S.W.2d 524 (Tex.Crim.App.1984).

Article 28.10 was amended in 1985. The State contends that since the *Howard* decision was before the amendment, *Howard* is not controlling here. The State points out that new article 28.10(c) prohibits indictment amendments over a defendant's objection *only* if the amendment: (1) charges an additional or different offense; or (2) prejudices the substantial rights of the accused. *See Jones v. State*, 755 S.W.2d 545, 547 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); *see also Mills*, 747 S.W.2d at 821. The State urges us to reconsider *Mills* and hold that the trial court did not err in permitting amendment of the indictment after trial began.

We conclude that *Howard* does not control here because of the substantial

changes made by the 1985 amendment to article 28.10. Also, for the reasons stated below, we need not reconsider *Mills.*

First, appellant did not request a ten-day delay to respond to the amendment. *See* TEX.CODE CRIM.PROC.ANN. art. 28.10(a) (Vernon 1989). Second, appellant did not move for a continuance for more time to prepare a defense. Appellant waived the right to raise these claims on appeal because he did not object on those grounds. TEX.R.APP.P. 52(a).

■ We will assume, without deciding, that the trial court erred by permitting the amendment after trial started. Therefore, we must determine whether the error harmed appellant. If the record reveals error, we must reverse the judgment unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX.R.APP.P. 81(b)(2). When we apply this rule, we do not focus upon the propriety of the trial's outcome. Instead, we focus on the integrity of the conviction process. We examine the source of the error, the nature of the error, whether or to what extent the State emphasized it, and its probable collateral implications. Further, we consider how much weight a juror would probably place on the error. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). We focus on whether the error might have prejudiced the jurors' decision-making process. We do not ask whether the jury reached the correct result, but rather whether the jury was able to properly apply law to facts in reaching its verdict. *Harris,* 790 S.W.2d at 588. In essence, we must examine the record to determine whether the trial was essentially a fair one. It is the effect of the error and not the other evidence which dictates our conclusion. *Harris,* 790 S.W.2d at 588.

■ In *Harris,* the Court of Criminal Appeals mandated the procedure for reaching this determination. First, we isolate the error and all its effects, using the considerations set out above as well as any other considerations suggested by the facts. Second, we ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *See Harris,* 790 S.W.2d at 588.

■ Appellant and the complainant lived together for eight years before the alleged offense. They had two children together. Appellant had moved out of the apartment about six weeks before because he and the complainant fought over whether the second child was his and about money. The complainant testified that just before the actual offense, appellant called her and said, "[she] would die before he would and he would burn [her] clothes up." Later that same morning, appellant appeared at the apartment, and the complainant saw him pour what she thought was gasoline around the bedroom window and the front door. She testified that the fire began immediately. The complainant called the police and described appellant to the responding officers. These officers found appellant about two blocks from the burned apartment an hour or two after the fire. One of the officers testified that appellant and his clothes smelled like gasoline.

Appellant argues that had the issue of *idem sonans* been submitted to the jury, it is possible that the jury could have acquitted him because of the variance between the sound and spelling of the two names. Appellant did not at any time contest the complainant's identity. Evidence about the misspelling developed outside the jury's presence. The State did not emphasize the misspelling of the witness's first name. We conclude that because of the record, very little if any weight was placed on the error by the jury. We conclude that the error had no prejudicial effect on the jury's decision-making process and that the jury could properly apply the law to the facts to reach its verdict. We conclude that the error did not prejudice appellant's substantial rights. We conclude beyond a reasonable doubt that the amendment to the indictment did not contribute to appellant's conviction or punishment. We overrule appellant's first point of error.

■ In his second point, appellant contends that the trial court erred by refusing

to permit him to develop impeachment testimony from the complainant. During cross-examination, counsel tried to develop testimony about a dispute between appellant and the complainant over money. Appellant wanted to place before the jury evidence that the complainant had given $400 belonging jointly to her and appellant to a male friend of the complainant. The State objected, claiming that the evidence was a specific instance of conduct asserted to attack the credibility of a witness and therefore violated rule 608(b) of the Texas Rules of Criminal Evidence. *See* TEX.R. CRIM.EVID. 608(b). Appellant's position was that the evidence went to the witness's credibility, that it would reveal a motivation or a bias of the witness to accuse appellant of arson, and that the jury was entitled to hear the evidence for those purposes. The trial court sustained the State's objection and prohibited defense counsel from further developing the evidence.

Appellant contends that the trial court's ruling denied him the right to a complete cross-examination as guaranteed by the sixth and fourteenth amendments of the United States Constitution. Appellant did not make this argument in the trial court and has not preserved it for appellate review. TEX.R.APP.P. 52(a); *Russell v. State*, 665 S.W.2d 771, 777 (Tex.Crim.App.1983). Be that as it may, we will again assume, without deciding, that the trial court's action was error. Again, the issue is whether the error was harmful to appellant. TEX.R. APP.P. 81(b)(2); *Harris*, 790 S.W.2d at 584. We conclude that had the trial court admitted the evidence, a rational trier of fact would not have reached a different result. We conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. We overrule appellant's point number two.

We affirm the trial court's judgment.